**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| RAYONIER ADVANCED MATERIALS INC., and RAYONIER PERFORMANCE FIBERS, LLC, | |
| Plaintiffs, | **CIVIL ACTION FILE NUMBER:** |
| v. | **CV221-063** |
| JOSHUA BYERLY, | |
| Defendant. | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Rayonier Advanced Materials Inc. ("RYAM") and Rayonier Performance Fibers, LLC ("RPF"), (collectively, "Plaintiffs") by its attorneys, file this Verified Complaint for Injunctive Relief and Damages against Defendant.

### THE PARTIES

1.

RYAM is a Delaware corporation with its principal office address at 1301 Riverplace Blvd., Suite 2300, Jacksonville, Florida 32207. RPF is a subsidiary of RYAM and Delaware Limited Liability Company with its principal office address at 1301 Riverplace Blvd., Suite 2300, Jacksonville, Florida 32207.

2.

RYAM, through its subsidiary RPF, operates a plant in Jesup, Georgia, which manufactures complex chemical cellulose products and fluff pulp products. RYAM, through its predecessor and subsidiary entities, have operated the plant in Jesup, Georgia, since

approximately 1954. The Jesup plant has been one of, if not the largest, employer in Wayne County, Georgia, since its existence, and has been operating consistently since it opened in 1954. The economic viability of the plant in Jesup has a great impact on the well-being of the citizens of Wayne County.

3.

Upon information and belief, Defendant Joshua Byerly ("Byerly") resides at 96 Mancey Garrason Loop, Ludowici, Georgia 31316, located in Long County, Georgia, and may be served with process at said address.

## JURISDICTION AND VENUE

4.

The Court has personal jurisdiction of Defendant Byerly based upon his residence, domicile, and presence in the state of Georgia. Venue is proper in this Court in that Byerly is a resident of Long County, Georgia.

5.

This Court has federal question subject matter jurisdiction over this case as the claims are being brought pursuant to the federal Defend Trade Secrets Act ("DTSA") in that the Plaintiffs' product is used in and intended to be used in interstate and foreign commerce.

## FACTUAL BACKGROUND

6.

Defendant Byerly was employed by the Plaintiffs in 2014 to work at Plaintiffs' plant located in Jesup, Georgia. On April 29, 2014, Defendant Byerly entered into a covenant against

disclosure and assignment of rights to intellectual property ("NDA"). A true and accurate copy of the NDA is attached hereto as Exhibit "A."[1]

7.

In the NDA, Defendant Byerly agreed he would not "…use for [his] own benefit or the benefit of others, or publish, disclose, divulge, or convey to others, any trade secret information, knowledge or data of Rayonier, Rayonier business, or that of third parties obtained by [Byerly] in the course of [Byerly's] employment with Rayonier." Exhibit A at ¶ 1(b).[2]

8.

Byerly further agreed that during his "…employment with Rayonier and any time after the termination of [his] employment with Rayonier for any reason, [he] would not use for [his] own benefit or the benefit of others, or publish, disclose, divulge, or convey to others any confidential information of Rayonier or that of third parties obtained by [Byerly] in the course of [Byerly's] employment with Rayonier." *Id*.

9.

Byerly further acknowledged that any breach of the provisions of the NDA, "**…would cause Rayonier irreparable injury which would not reasonably or adequately be compensated by damages in an action at law**. Therefore, [Byerly] agrees that Rayonier shall be entitled, in addition to any other remedies it may have under this Agreement, at law, or otherwise, **to immediate injunctive and other equitable relief to prevent or curtail any breach of this agreement by [Byerly]**. Nothing in this Agreement shall prohibit Rayonier from seeking to recover any legal or monetary damages for breaches of this Agreement." *Id*. at ¶ 5

---

[1] Plaintiffs have redacted the fingerprint on the electronic signature page to prevent the disclosure of any personal identifying information.

[2] Rayonier Inc. and RYAM split into separate corporate entities in 2014, and RYAM retained the Jesup plant and all pertinent contracts related thereto.

(emphasis added). The NDA further states "in the event an employee breaches this agreement, employee should be liable to Rayonier for all costs of enforcement, including attorney's fees and court costs in addition to all other damages in redress available to Rayonier in equity or in law." *Id*. at ¶ 11 (emphasis added).

10.

Defendant Byerly has a history of difficulty in dealing with stressful situations at the plant in Jesup, Georgia. In November 2020, Defendant Byerly had not reported to work and no one could reach him. After several days passed, the county sheriff was asked to perform a welfare check. The sheriff had to break into the home, and Byerly was found in a closet where he indicated he was tired. RYAM personnel strongly recommended to Byerly that he contact the Employee Assistance Program ("EAP").  The Plaintiffs have no knowledge whether Byerly contacted EAP.

11.

In late April 2021, the Jesup plant initiated an annual maintenance shutdown. During this time, Defendant Byerly reacted poorly to the demands of the shutdown, making and then withdrawing reports of operating issues that when investigated could not be confirmed.

12.

As a result of his history and behavior, the Plaintiffs determined that Byerly was not a good fit as an engineer for the Jesup facility and made a determination that Byerly should be terminated as an at-will employee in June of 2021.

13.

Although not required to, the Plaintiffs offered Defendant Byerly a $20,000.00 severance package that included continuing medical benefits and outplacement services for a period of time

(the "Severance Package") to assist Byerly with finding new employment. Byerly was provided a copy of his executed NDA at this meeting and was reminded to review the NDA to refresh his recollection of his obligations under it. Byerly was given 5 business days to accept or reject the Severance Package.

14.

During this timeframe, Byerly sent a number of threatening emails to Plaintiffs' corporate leaders expressing similar concerns about operating conditions at the facility that had been previously investigated by local Jesup facility management and threatening to sue the company if his termination was not rescinded.

15.

On June 10, 2021, the date his response to the Severance Package was due, Defendant Byerly responded to the company that he would execute the operative documents for $2,000,000.00. Following that communication Byerly continued sending threatening emails indicating his intention to extort money from the company as a quid pro quo for him reporting the operating issues that he claims have not been addressed. The emails demonstrate how he reacts to stressful conditions. On June 11, 2021, he emailed that he was resigning immediately and taking vacation through June 25, 2021, even though his termination was effective, and that he would still negotiate a settlement amount for him not to disclose trade secret information and potentially other information pertaining to the company's processes and operating issues which Defendant Byerly claimed existed. As explained before, the operational issues were confirmed not to exist, however, Plaintiffs' trade secret information does exist.

16.

5

The most pertinent email sent by Defendant Byerly, as it relates to this action, was an email sent to corporate leadership dated June 14, 2021. A true and accurate copy of said email is attached hereto as Exhibit "B." In said email, Byerly states "I find myself holding the final card in my arsenal." "…[T]his final card, however, cannot be overstated – if I play this card, **RYAM will suffer irreparable harm** – to put it another way, the consequences will be utterly devastating to the tune of $100,000,000 to $10,000,000,000." "…I have designed a concept spacecraft that will potentially put SpaceX out of business using mere S7 level effort, I intend to attract NASA's interest without using more than S6 level effort, **and have reverse engineered the entire SVP plant** from the ground up with meager S5 level effort (admittedly close to S6 level)." *Id* (emphasis added).

17.

Defendant Byerly was an engineer and the area manager for the SVP/Chemical Preparation area at the Jesup plant. SVP stands for single-vessel processes and is used as short hand to refer to the chlorine dioxide ("ClO2") production plant, which is part of the Plaintiffs' bleaching process. The bleaching process represents some of the Plaintiffs' most protected intellectual property and trade secrets. Defendant Byerly worked in the area, was familiar with the process, signed an NDA not to disclose the information, and cannot reverse engineer a process he is already intimately familiar with because of his job.

18.

Defendant Byerly, as an engineer and area manager of a confidential area of the Plaintiffs' business, which contained closely guarded intellectual property, was acutely aware of Plaintiffs' confidential information and trade secrets, and how the exposure of said information

to customers, the general public, or business competitors could be extremely harmful to the Plaintiffs.

19.

Defendant Byerly has also, without permission or authority, downloaded certain folders from his desktop computer to an external thumb drive. These folders contain names such as "chlorine generator" and "SVP." Defendant Byerly connected an external media device to his laptop and used it as an external hard drive. His actions constitute conversion of Plaintiffs' intellectual property.

**TRADE SECRETS**

20.

The Plaintiffs are in the business of producing complex chemical cellulose products. They have developed a strong position in the industry with respect to the making and production of complex cellulose products. This, in part, is achieved by their highly guarded trade secret information that is not disclosed to the public or to customers. Very generally and in part, trade secret information exists in the SVP plant referenced in Defendant Byerly's email, which he had access and information to involving the manner in which the SVP plant is configured, the cooking formulas which are utilized, the various chemical composition of the sodium chlorate used in the SVP plant, how the chlorine dioxide is used in making various products, and specific customer information. Defendant Byerly's statement that he has reversed engineered the entire SVP plant and intends to supply such information to NASA and/or use it to compete with SpaceX shows clear intent on the part of Defendant Byerly to expose confidential and privileged trade secret information belonging to the Plaintiffs.

21.

The Plaintiffs use their trade secrets to produce products sold in both interstate and foreign commerce.

22.

Plaintiffs' trade secrets and intellectual property, as described above, derive actual intellectual economic value from not being generally known to and not being readily ascertainable through normal means, by another person or entity who can obtain economic value from the disclosure or use of the information.

**PLAINTIFFS' PROTECT AND SECURE ITS TRADE SECRETS AS CONFIDENTIAL PROPRIETARY INFORMATION**

23.

Because of the confidential and proprietary nature of the activities conducted in the area of the plant which Defendant Byerly worked, Plaintiffs take significant efforts to protect the confidentiality of the work done there, including, without limitation, the requirement that employees sign confidentiality and non-disclosure agreements, limiting access to the facilities through the use of guards and badges, requiring visitors, contractors, and consultants to sign confidentiality agreements, escorting visitors, prohibiting photography, and limiting access to computer networks with the use of passwords that require specific permission for employees to ascertain certain databases in the servers. Notebooks maintained by scientists are consecutively numbered, logged, and maintained in secure locations. Moreover, Plaintiffs have routinely refused to participate in market and industry research studies of the unique high value specialty cellulose area in order to prevent any unnecessary circulation of information that is unique and proprietary to the Plaintiffs.

24.

The Plaintiffs confidential business information, product formulas, derivation and specifications, manufacturing processes and methodologies, and proprietary business models derive an independent economic value from not being generally known to, or reasonably ascertainable by, other persons or competitors in the specialty cellulose fiber business, and are made the subject of extensive efforts to maintain their secrecy. Information shared with customers in discussions is routinely "masked" to prevent any unintended confidential disclosure. Defendant Byerly, as previously mentioned, is well aware of the trade secrets and confidential business proprietary information, as evidenced by the agreement he signed attached hereto as Exhibit A.

## COUNT I – VIOLATION OF THE DTSA

25.

Plaintiffs' reassert and incorporate paragraphs 1-24 of its Complaint as if fully set forth herein.

26.

Plaintiffs are the owners of trade secrets, intellectual property, and confidential business proprietary information.

27.

Plaintiffs utilize its trade secret information to sell products in interstate and foreign commerce.

28.

Plaintiffs derive economic value for these trade secrets, intellectual property, and confidential business proprietary information.

29.

Plaintiffs closely protect and secure its trade secrets, intellectual property, and confidential business proprietary information.

30.

Defendant Byerly, during his employment, had access to Plaintiffs' trade secrets, intellectual property, and confidential business proprietary information.

31.

Defendant Byerly has threatened to and/or has already misappropriated Plaintiffs' trade secrets, intellectual property, and confidential business proprietary information. *See* Exhibit B.

32.

Defendant Byerly has misappropriated trade secrets, intellectual property, and confidential business proprietary information by downloading said information onto an external thumb drive and/or other external storage device without authority or permission.

33.

Defendant Byerly executed an NDA not to disclose Plaintiffs' trade secrets, intellectual property, and confidential business proprietary information.

34.

Plaintiffs will suffer irreparable harm unless Defendant Byerly is enjoined from misappropriating Plaintiffs' trade secrets, intellectual property, and confidential business proprietary information.

35.

Plaintiffs will suffer irreparable harm unless Defendant Byerly is ordered to return to Plaintiffs any diagrams, charts, written information, electronically-stored information, thumb drives, or any other source of information containing Plaintiffs' trade secrets, intellectual property, and confidential business proprietary information, including any work product Defendant Byerly derived from these data and information.

36.

As a result of Defendant Byerly's violation of the DTSA, Plaintiffs are entitled to a temporary, preliminary, and/or permanent injunction ordering Defendant Byerly not to misappropriate any of the Plaintiffs' trade secrets, intellectual property, and/or confidential business proprietary information, and further ordering Defendant Byerly to return any information inappropriately obtained by Defendant Byerly to the Plaintiffs.

## COUNT II – BREACH OF CONTRACT

37.

Plaintiffs reassert and incorporate paragraphs 1-36 of its Complaint as if fully set forth herein.

38.

Defendant Byerly entered into an NDA attached as Exhibit A to this Complaint.

39.

Defendant Byerly has misappropriated and used Plaintiffs' knowledge, data, trade secrets and confidential business proprietary information in direct violation of the NDA, and therefore, has breached the contract.

40.

Defendant Byerly's breach of the contract has proximately caused Plaintiffs actual damages for which they are entitled to recover.

**COUNT III – CONVERSION**

41.

Plaintiffs reassert and incorporate paragraphs 1-40 of its Complaint as if fully set forth herein.

42.

Plaintiffs own and have exclusive rights of possession of its data, information, trade secrets, intellectual property, and its confidential business proprietary information.

43.

Defendant Byerly, without permission, has taken and converted Plaintiffs' intellectual property.

44.

Defendant Byerly has been requested to return Plaintiffs' property, but has not returned said property.

45.

By failing or refusing to return the property Defendant Byerly misappropriated, he has committed the tort of conversion.

46.

The acts of Defendant Byerly were intentional and done with the intent to cause harm to the Plaintiffs.

47.

The Plaintiffs have suffered damages as a result of the conversion by the Defendant Byerly, and Plaintiffs are entitled to recover all documents, in any form, taken by the Defendant, with damages in an amount to be determined by a jury.

## TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTION

48.

Plaintiffs reassert and incorporate paragraphs 1-47 of its Complaint as if fully set forth herein.

49.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs seek a temporary restraining order, a preliminary injunction, and/or permanent injunction preventing Defendant Byerly from misappropriating Plaintiffs' data, information, trade secrets, intellectual property, and confidential business proprietary information. Plaintiffs further request that Defendant Byerly be ordered to return all of Plaintiffs' intellectual property to Plaintiffs in any form in which Defendant Byerly currently retains said property.

50.

Plaintiffs have a substantial likelihood of success on the merits as to all counts set forth in its Complaint.

51.

Because of the acts of Defendant Byerly, Plaintiffs have a substantial threat of sustaining irreparable injury.

52.

The threatened injury to the Plaintiffs outweigh any potential harm to the Defendant.

53.

Any injunction issued by the Court will not disserve the public interest and will in fact protect the economic interests of all the employees of the Plaintiffs at the Jesup plant and the citizens of Wayne County who derive a great economic benefit from the economic well-being of the Plaintiffs.

**<u>DAMAGES</u>**

54.

Plaintiffs reassert and incorporate paragraphs 1-47 of its Complaint as if fully set forth herein.

55.

Pursuant to the DTSA, Plaintiffs may have sustained damages for the actual loss caused by the misappropriation of trade secrets; damages for unjust enrichment caused by the misappropriation of trade secrets; or damages caused by the misappropriation measured by the imposition of liability for a reasonable royalty for Defendant Byerly's unauthorized disclosure or use of the trade secrets.

56.

Defendant Byerly willfully and maliciously misappropriated Plaintiffs' trade secrets and is therefore liable for exemplary damages in an amount equal to two times the amount of damages awarded pursuant to paragraph 55 above.

57.

Defendant Byerly is liable to Plaintiffs for actual damages caused by his breach of the NDA.

58.

Pursuant to paragraph 11 of the NDA, Defendant Byerly is liable to the Plaintiffs for all costs of enforcement of the NDA, including attorney's fees and court costs, in addition to all other damages and redress available to the Plaintiffs in equity or in law.

59.

Defendant Byerly committed an intentional act to cause harm to Plaintiffs when he converted Plaintiffs' intellectual property.

60.

As a result of Defendant Byerly's intentional conversion of Plaintiffs' intellectual property, he should be ordered to return the property to the Plaintiffs and pay damages in an amount determined by the jury.

61.

As a result of Byerly's intentional conversion of Plaintiffs' intellectual property, Defendant Byerly acted with the specific intent to cause harm to the Plaintiffs, and therefore, Plaintiffs should be awarded punitive damages without any limitation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray:

### A.  INJUNCTIVE RELIEF

Defendant be temporarily, preliminarily, and/or permanently enjoined from misappropriating the Plaintiffs' trade secrets, and using the Plaintiffs' confidential business proprietary information, and that Defendant be ordered to return all of Plaintiffs' intellectual property to Plaintiffs in any form in which Defendant has retained said intellectual property.

### B.  DAMAGES

That judgment be entered against the Defendant for:

(1) all damages suffered by the Plaintiffs as a result of the conduct of the Defendant complained of herein and as specifically set forth in the Complaint;

(2) all relief available under the DTSA, including without limitation, double damages for Defendant's willful and malicious misappropriation;

(3) damages for breach of the NDA, and all costs of enforcement including attorney's fees, court costs, and any other damages available to Plaintiffs;

(4) all damages allowable for the intentional conversion of Plaintiffs' intellectual property; and

(5) For punitive damages as determined by the enlightened conscious of the jury.

### C.  OTHER RELIEF

Such, other, further, or different relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues so triable in this action.

Respectfully submitted, this  25th  day of  June   , 2021.

                                   HALL BOOTH SMITH

                                    /s/ James B. Durham_____
                                   JAMES B. DURHAM
                                   Georgia Bar No.: 235526
3528 Darien Highway, Suite 300     MATTHEW B. BALCER
Brunswick, Georgia 31525           Georgia Bar No.: 736877
Phone: (912) 554-0093              *Counsel for Plaintiffs Rayonier Advance*
Fax:    (912) 554-1973             *Materials Inc. and Rayonier Performance*
Email: jdurham@hallboothsmith.com  *Fibers, LLC*
        mbalcer@hallboothsmith.com