# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

| | |
|---|---|
| RAYONIER ADVANCED MATERIALS INC., and RAYONIER PERFORMANCE FIBERS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JOSHUA BYERLY,<br><br>Defendant. | CIVIL ACTION FILE NUMBER:<br><br>2:21-CV-00063 |

## FINAL JUDGMENT AND PERMANENT INJUNCTION

Plaintiffs Rayonier Advanced Materials Inc. ("RYAM"), and Rayonier Performance Fibers, LLC ("RPF") (collectively, "Plaintiffs") have filed a Motion for Default Judgment against Defendant Joshua Byerly ("Defendant") or ("Byerly"). Plaintiffs seek to have a Permanent Injunction entered as to the Defendant. The Court finds as follows:

## **FINDINGS OF FACT**

1. RYAM is a Delaware corporation with its principal office address at 1301 Riverplace Blvd., Suite 2300, Jacksonville, Florida 32207. (Dkt. No. 1 ¶ 1)

2. RPF is a subsidiary of RYAM and Delaware Limited Liability Company with its principal office address at 1301 Riverplace Blvd., Suite 2300, Jacksonville, Florida 32207. (Dkt. No. 1 ¶ 1)

3. Byerly resides at 96 Mancey Garrason Loop, Ludowici, Georgia 31316, located in Long County, Georgia. (Dkt. No. 1 ¶ 3)

4.      Plaintiffs filed their Complaint on June 25, 2021, alleging causes of action against Byerly for violations of the Defend Trade Secrets Act, Breach of Contract, and Conversion. Plaintiffs have sought both injunctive and monetary relief.  (Dkt. No. 1)

5.      Byerly was served with the Complaint on June 29, 2021. (Dkt. No. 10)

6.      The return of service was filed with the Court on June 30, 2021. (Dkt. No. 10)

7.      The Court has personal jurisdiction of Byerly based upon his residence, domicile, and presence in the state of Georgia.

8.      Venue is proper in this Court in that Byerly is a resident of Long County, Georgia.

9.      This Court has federal question subject matter jurisdiction over this case as the claims are being brought pursuant to 18 U.S.C. § 1836, the Defend Trade Secrets Act ("DTSA"), in that the Plaintiffs' product is used in and intended to be used in interstate and foreign commerce. (Dkt. No. 1 ¶ 5)

10.     Upon consideration of Plaintiffs' Verified Complaint and the arguments of the Parties at the hearing on June 29, 2021, this Court entered a temporary restraining order on June 29, 2021, restraining Byerly from misappropriating Plaintiffs' trade secrets and ordering Byerly to return any form of trade secrets back to Plaintiffs. (Dkt. No. 9)

11.     In the temporary restraining order, this Court ordered Plaintiffs to post a $5,000 cash bond as security required by FRCP 65(c). (Dkt. No. 9)

12.     Plaintiffs' counsel posted the $5,000 cash bond as ordered by the Court.

13.     Upon consideration of Plaintiffs' Verified Complaint, Plaintiffs' Supplemental Motion and Brief, the exhibits attached thereto, and the evidence and arguments of the Parties, this Court entered a preliminary injunction on July 12, 2021, restraining Byerly from misappropriating

Plaintiffs' trade secrets and ordering Byerly to return any form of trade secrets back to Plaintiffs. (Dkt. No. 15)

14. Defendant's Answer to the Complaint was due on July 20, 2021.

15. Defendant failed to answer the Complaint.

16. Defendant had appeared personally for prior hearings; therefore, the Court conducted a hearing pursuant to Federal Rule of Civil Procedure 55(b)(2). The hearing occurred on October 25, 2021. Defendant was sent notification of the hearing on October 13, 2021.

17. Plaintiffs take significant efforts to protect their confidential business proprietary information and trade secrets. (Dkt. No. 9 ¶ 23)

18. Plaintiffs' confidential business proprietary information, product formulas, derivation and specifications, manufacturing processes and methodologies, and proprietary business models derive an independent economic value from not being generally known to, or reasonably ascertainable by other persons or competitors in the specialty cellulose fiber business and are made the subject of extensive efforts to maintain their secrecy. (Dkt. No. 9 ¶ 24)

19. The Defendant entered into an NDA on April 29, 2014. The Defendant agreed he would not "….use for [his] own benefit or the benefit of others, or publish, disclose, divulge, or convey to others, any trade secret information, knowledge, or data of [Plaintiffs], [Plaintiffs'] business, or that of third parties obtained by [Defendant] in the course of [Defendant's] employment with [Plaintiffs]." The Defendant further agreed that during his "…employment with [Plaintiffs] and any time after the termination of [his] employment with [Plaintiffs] for any reason, [he] would not use for [his] own benefit or the benefit of others, or publish, disclose, divulge, or convey to others any confidential information of [Plaintiffs] or that of third parties obtained by [Defendant] in the course of [Defendant's] employment with [Plaintiffs]." Defendant further acknowledged that any

breach of the provisions of the NDA, "…would cause [Plaintiffs] irreparable injury which would not reasonably or adequately be compensated by damages in an action at law. Therefore, [Defendant] agrees that [Plaintiffs] shall be entitled, in addition to any other remedies it may have under this Agreement, at law, or otherwise, to immediate injunctive and other equitable relief to prevent or curtail any breach of this [A]greement by [Defendant]…" (Dkt. No. 1, ¶¶ 6, 7, 8, 9, and Dkt. No. 1-1 ¶¶ 1 and 5)

## CONCLUSIONS OF LAW

Defendant has failed to file an answer, or otherwise plead, within the requisite twenty-one (21) days.  As a result of Defendant's default, Plaintiffs request this Court issue a permanent injunction to protect Plaintiffs' trade secrets and confidential business proprietary information and order Defendant to return Plaintiffs' intellectual property. Issuing a permanent injunction is an appropriate remedy and within this Court's authority when granting a default judgment. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1346-47 (11th Cir. 2013).

To obtain a permanent injunction, a plaintiff must typically show:

(1) it has suffered an irreparable injury;
(2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) the public interest would not be disserved by a permanent injunction.

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).  The DTSA allows an injunction to be granted "to prevent any actual **or threatened misappropriation**." 18 U.S.C.A. § 1836(b)(3)(a)(i) (emphasis added). The first and second factors of granting a preliminary injunction, irreparable injury and inadequate compensation, are closely related. An irreparable injury is one that "cannot be undone through monetary remedies." *United States v. Jenkins,* 714 F. Supp. 2d 1213, 1221 (S.D. Ga. 2008) (*quoting Deerfield Med. Ctr. v. City*

4

*of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)); *see also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (holding that an irreparable injury must be actual and imminent). The DTSA allows the Court discretion when ordering an injunction for threatened misappropriation. 18 U.S.C.A. § 1836(b)(3)(a)(i). Moreover, the statute allows the Court to take "affirmative action" to protect trade secrets. 18 U.S.C.A. § 1836(b)(3)(a)(ii).

In Plaintiffs' Verified Complaint, previously filed motions, and oral arguments, Plaintiffs have established the likelihood, and imminent threat, of Defendant's future misappropriation of Plaintiffs' trade secrets and confidential business proprietary information. Here, Defendant has threatened the misappropriation of Plaintiffs' trade secrets in violation of the DTSA. Dkt. 1 at ¶¶ 15-16 ("I find myself holding the final card in my arsenal." "… [T]his card, however, cannot be overstated – if I play this card, **RYAM will suffer irreparable harm**—to put it another way, the consequences will be utterly devastating to the tune of $100,000,000 to $10,000,000,000." "…I have designed a concept spacecraft that will potentially put Space X out of business using mere S7 level effort, I intend to attract NASA's interest without using more than S6 level effort, **and have reverse engineered the entire SVP plant from the ground up** with meager S5 level effort (admittedly close to S6 level).") (emphasis added); *see also* Dkt. 14-1 at ¶ 4 (referencing P000008) ("RYAM is about 10 years too late to late to challenge me legally. If they are foolish enough to try, I will take them to the cleaners – on the order of millions. If they have half a brain, they will accept any conditions proposed."). Defendant was employed in a secure sector of Plaintiffs' Jesup plant, which allowed him access to Plaintiffs' trade secrets in order to perform his duties as an employee of the Plaintiffs. Dkt. 14-1 ¶ 5 ("Joshua Byerly, as an engineer and area manager for the SVP/Chemical Preparation Area at the Jesup plant had access to and is familiar with the amounts of and combinations of various chemicals used by RYAM in making products for our customers.

RYAM closely protects these trade secrets…"). In addition, Plaintiffs have shown that Defendant may have taken intellectual property from the Plaintiffs, which he has not returned. Dkt. 14-2 ¶¶ 2, 7 (referencing the affidavit of Corey Kosciuszko, infrastructure analyst with Rayonier Advanced Materials Inc., and stating, "[in] my analysis, I determined that two different volume serial numbers show that two different removable storage devices have been used."). *see also id.* ¶ 10 ("Without obtaining the two removable storage devices . . . I am unable to determine exactly what the files Josh Byerly has in his possession contain.").

Plaintiffs contend that Defendant's erratic behavior combined with his capability to release and/or use Plaintiffs' trade secrets and confidential business proprietary information for pecuniary gain and/or spite cannot be understated. Defendant stated to this Court while describing various safety concerns:

> The Court: What I don't hear is how that allows you to break the confidentiality, the non-disclosure agreement.
> Mr. Byerly: I'm confused. I'm not breaking the non-disclosure agreement.
> The Court: So you don't have any –
> Mr. Byerly: No.
> The Court: -- intellectual property?
> Mr. Byerly: **Nothing except what's in my mind, and I obviously cannot erase that. But I can choose not to use it.**

Transcript from the June 29, 2021, Motion Hearing, pp. 19:23-25; 20:1-6 (Dt. No. 13 and Dkt. No. 19-1). In the same hearing, Defendant noted that prior references he made to SpaceX, NASA, and millions to billions of dollars in financial loss he could cause to Plaintiffs were only for attention. *Id*. at pp. 23:15-19; 24:23-25; 25:1-9. However, Plaintiffs point out that Defendant's statements and actions after the June 29 hearing raised concern about Defendant's behavior. Dkt. 14-1 ¶ 4.

Further, Defendant's threats of misappropriation are in violation of the non-disclosure agreement Defendant entered into with Plaintiffs. Dkt. 1 ¶ 7 ("Defendant Byerly agreed he would not '… use for [his] own benefit or the benefit of others, or publish, disclose, divulge, or convey

6

to others, any trade secret information, knowledge or data of Rayonier, Rayonier business, or that of third parties obtained by [Byerly] in the course of [Byerly's] employment with Rayonier.'"); *see also id.* ¶ 9 (stating violation of the NDA would cause irreparable injury to the Plaintiffs). In addition, Defendant's contentions that he has "reversed engineered" the Plaintiffs' SVP Plant are in further violation of the non-disclosure agreement, requiring injunctive relief to remedy the Plaintiffs. Dkt. 1 ¶ 20, *supra*; Dkt. 1-1 ¶ 2 ("Employee irrevocably assigns to Rayonier all of the Employee's rights to all Subject Inventions …. 'Subject Invention' means any Invention (as defined below) which is or was conceived by Employee solely or jointly with others and (i) relates to the actual or anticipated business, research or development of Rayonier, (ii) results from any work performed by Employee using any equipment, facilities, materials, company information or personnel of Rayonier, or (iii) is suggested by or results from any task assigned or performed by Employee for or on behalf of Rayonier.").

Plaintiffs have demonstrated that the misappropriation of their trade secrets will cause them irreparable harm, and Defendant's threat of such misappropriation cannot be rectified monetarily. Dkt. 14-1 ¶ 6 ("The threats to use trade secrets and contact third parties that have been made by Joshua Byerly could cause irreparable harm against RYAM."); *see also* Dkt. 1 ¶ 24 ("The Plaintiffs' confidential business information, product formulas, derivation and specifications, manufacturing processes and methodologies, and proprietary business models derive an independent economic value from not being generally known to, or reasonably ascertainable by other persons or competitors in the specialty cellulose fiber business, and are made subject of extensive efforts to maintain their secrecy.").

Plaintiffs' trade secrets have given them strong positions in the cellulose industry as they can process wood pulp unlike their competitors, and Defendant's threats of misappropriation have

put Plaintiffs' position in jeopardy. Dkt. 1 ¶ 20. (explaining Plaintiffs' trade secrets and SVP plant configurations that have put Plaintiffs in a strong position in the production of complex cellulose products).   If the Defendant releases Plaintiffs' trade secrets, which he has indicated that he will, Plaintiffs' irreparable harm will be irreversible. *Compare to Syntel Sterling Best Shores Mauritius Lmtd. V. TriZetto Grp. Inc.*, 2021 WL 1553926 (S.D. N.Y. April 20, 2021) (holding that a permanent injunction is warranted against the defendant because the plaintiff could not be adequately compensated monetarily and the likelihood that, if not enjoined, the defendant would disseminate trade secrets to third parties). Under the circumstances of this case, Plaintiffs contend that the entry of a permanent injunction against the Defendant is the only option they have available to assure their trade secrets and confidential business proprietary information are protected. The Court finds that Plaintiffs have satisfied the first and second prerequisites for this Court to enter a permanent injunction.

As to the third prerequisite, the threatened injury to Plaintiffs clearly outweighs any potential harm to Defendant if he is enjoined from misappropriating Plaintiffs' trade secrets and confidential business proprietary information. Defendant admitted at the temporary restraining order hearing that he is not aware of any way that such an injunction would harm him. (Dkt. No. 13, Transcript from June 29, 2021, Motion Hearing, p. 22:2-7)

Finally, an injunction preventing Defendant from misappropriating Plaintiffs' trade secrets would not disserve the public interest. To the contrary, such an injunction would serve the public interest by protecting the economic viability of the Jesup pulp plant and by encouraging industries to develop intellectual property with the comfort that the courts will assist them in protecting the information from misappropriation. Therefore, all the prerequisites have been met for this Court to enter a permanent injunction.

Plaintiffs posted a $5,000 bond in this case pursuant to FRCP 65(c). The Defendant was not wrongfully enjoined, and therefore, the $5,000 security bond shall be returned to Plaintiffs' counsel. Plaintiffs stated in their motion for default judgment that they would dismiss without prejudice all other claims in their Complaint if the Court found that Defendant should be permanently enjoined. The Court accepts counsel's statement as a motion to dismiss Plaintiffs' remaining claims without prejudice.

NOW, THEREFORE, IT IS ORDERED ADJUDGED, AND DECREED AS FOLLOWS:

A. Defendant is permanently restrained and enjoined from misappropriating any of Plaintiffs' trade secret information or confidential business proprietary information;

B. Defendant is ordered to return all of Plaintiffs' trade secrets and confidential business proprietary information to Plaintiffs in any form in which Defendant has retained said information;

C. Plaintiffs' Five Thousand Dollar ($5,000) cash bond which has been posted will be released back to the Plaintiffs' counsel; and

D. All remaining claims of Plaintiffs are dismissed without prejudice.

**SO ORDERED**, this 1st day of November, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

ORIGINAL DRAFT PREPARED BY:


 /s/ James B. Durham
JAMES B. DURHAM
Georgia Bar No.: 235526
MATTHEW B. BALCER
Georgia Bar No.: 736877
HALL BOOTH SMITH, P.C.
3528 Darien Highway, Suite 300
Brunswick, Georgia 31525
Phone: (912) 554-0093
Fax:    (912) 554-1973
Email: jdurham@hallboothsmith.com
           mbalcer@hallboothsmith.com
*Counsel for Plaintiffs Rayonier Advance Materials Inc.*
*and Rayonier Performance Fibers, LLC*


DRAFT MODIFIED BY THE COURT
AS ENTERED